# SUPREME COURT OF WISCONSIN

| | |
|---|---|
| CASE NO.: | 2022AP652 |

| | |
|---|---|
| COMPLETE TITLE: | In re the termination of parental rights to A.G., a person under the age of 18:<br><br>State of Wisconsin,<br>        Petitioner-Respondent-Petitioner,<br>  v.<br>A. G.,<br>        Respondent-Appellant. |

REVIEW OF DECISION OF THE COURT OF APPEALS
Reported at 404 Wis. 2d 511,979 N.W.2d 822
(2022 – unpublished)

| | |
|---|---|
| OPINION FILED: | June 30, 2023 |
| SUBMITTED ON BRIEFS: | |
| ORAL ARGUMENT: | January 17, 2023 |

| | |
|---|---|
| SOURCE OF APPEAL: | |
| COURT: | Circuit |
| COUNTY: | Milwaukee |
| JUDGE: | Ellen R. Brostrom |

JUSTICES:
REBECCA GRASSL BRADLEY, J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER, C.J., joined. HAGEDORN, J., filed a concurring opinion, in which KAROFSKY, J., joined. DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY, J., joined.

NOT PARTICIPATING:
PATIENCE DRAKE ROGGENSACK, J., did not participate.

ATTORNEYS:

For the petitioner-respondent-petitioner, there were briefs filed by *John T. Chisolm*, district attorney, and *Katie Gutowski,* assistant district attorney. There was an oral argument by *Katie Gutowski,* assistant district attorney.

For the respondent-appellant, there was a brief filed by *Christopher D. Sobic,* assistant state public defender. There was an oral argument by *Christopher D. Sobic,* assistant state public defender.

Guardian ad litem briefs were filed by *Courtney L.A. Roelandts* and *The Legal Aid Society of Milwaukee, Inc.,* Milwaukee. There was an oral argument by *Courtney L.A. Roelandts.*

**2023 WI 61**

NOTICE

**This opinion is subject to further editing and modification. The final version will appear in the bound volume of the official reports.**

No. 2022AP652
(L.C. No. 2021CV1469)

STATE OF WISCONSIN      :      IN SUPREME COURT

**In re the termination of parental rights to A.G., a person under the age of 18:**

**State of Wisconsin,**

      **Petitioner-Respondent-Petitioner,**

  **v.**

**A. G.,**

      **Respondent-Appellant.**

**FILED**

**JUN 30, 2023**

Samuel A. Christensen
Clerk of Supreme Court

REBECCA GRASSL BRADLEY, J., announced the mandate of the Court, and delivered an opinion, in which ZIEGLER, C.J., joined. HAGEDORN, J., filed a concurring opinion, in which KAROFSKY, J., joined. DALLET, J., filed a dissenting opinion, in which ANN WALSH BRADLEY, J., joined.

PATIENCE DRAKE ROGGENSACK, J., did not participate.

REVIEW of a decision of the Court of Appeals. *Reversed.*

¶1 REBECCA GRASSL BRADLEY, J. The State filed a petition to terminate the parental rights of A.G. under Wis. Stat. § 48.415 (2019-20), alleging A.G.'s biological daughter remained a child in continuing need of protection or services

(continuing CHIPS) and A.G.'s failure to assume parental responsibility for his daughter. This appeal concerns whether A.G. knowingly, voluntarily, and intelligently pled no contest to one of those two grounds in the termination of parental rights (TPR) petition. A.G. argues he did not understand the circuit court at disposition would have to decide whether to terminate his parental rights.[1] He further argues the circuit court erroneously indicated the State would have to prove at disposition that "termination was in . . . [the child]'s best interest" by "clear and convincing" evidence. The State, A.G. claims, has no such burden; therefore, A.G. asserts he pled no contest under the belief that his odds of a favorable outcome were higher than they legally should have been.

¶2 The circuit court denied A.G.'s plea withdrawal motion. The court of appeals reversed that decision in an unpublished opinion and ordered the cause remanded with directions to allow A.G. to withdraw his plea. State v. A.G. (A.G. II), No. 2022AP652, unpublished slip op. (Wis. Ct. App. July 12, 2022). The State and the guardian ad litem (GAL) each filed a petition for review. We granted both petitions.

¶3 We hold A.G. knowingly, voluntarily, and intelligently pled no contest. During the plea colloquy, the circuit court told A.G., "[t]he second half of the case is where the [c]ourt

---

[1] The Honorable Mark A. Sanders presided over the initial appearance in the case, but the Honorable Ellen R. Brostrom presided over the plea colloquy and was the judge who denied A.G.'s plea withdrawal motion. Both judges serve on the Milwaukee County Circuit Court.

2

decides is it in the child's best interest to in fact terminate your parental rights." At the initial appearance ten months before the colloquy, the court had already informed A.G. of potential dispositional outcomes:

> One thing I could decide is that termination of parental rights can [sic] best for the kids that are involved. If I make that decision, that ends all legal relationship between that parent and that child. As far as the law is concerned, that parent and that child become complete strangers to each other. But that's not the only potential outcome. There are other potential outcomes that don't involve termination of parental rights.

Assuming the colloquy was defective, A.G. had previously been notified that at disposition the court may or may not terminate his parental rights. Additionally, the court conducted a contested dispositional hearing the day after the colloquy, and A.G.'s testimony shows he sought reunification rather than termination of his parental rights. After the court held an evidentiary hearing on A.G.'s plea withdrawal motion, the court found A.G. had demonstrated an understanding of potential dispositions through his testimony at the dispositional hearing. That finding is not clearly erroneous and must be accepted. Other parts of the record confirm the validity of A.G.'s plea. Consequently, we must reject A.G.'s first argument under the applicable standard of review. See State v. Brown, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906 (citing State v. Trochinski, 2002 WI 56, ¶16, 253 Wis. 2d 38, 644 N.W.2d 891).

¶4 Regarding A.G.'s second argument, he is correct to note that Wis. Stat. § 48.426(2) (2021-22)[2] does not place a burden of proof on the State; however, the circuit court actually held the State to the clear and convincing standard at disposition and reiterated at multiple points that the State satisfied this standard. Accordingly, the court did exactly what A.G. claims the court told him it would do. Placing a burden on the State benefitted A.G. and did not affect A.G.'s ability to weigh the pros and cons of entering this particular no contest plea. If A.G. thought a favorable outcome was more likely because the State had to meet a clear and convincing standard, the State actually did meet that standard. The court of appeals erred in permitting A.G. to withdraw his plea; therefore, we reverse its decision.

## I. BACKGROUND

¶5 The State's TPR petition sought to sever the parent-child relationship between A.G. and his daughter. Toward the top of the first page, in bold lettering, the TPR petition states: **"Petition for Termination of Parental Rights**[.]" The TPR petition continues, "[t]he petitioner seeks termination of parental rights of . . . [A.G.]" Toward the end, the TPR petition reads, "[b]ased on the foregoing, . . . [A.G.] is not fit to be a parent to the above-named child. Upon consideration of the entire record in this case, termination of parental

---

[2] Unless otherwise indicated, all subsequent references to the Wisconsin Statutes are to the 2021-22 version.

4

rights is warranted. . . . The best interest of the child will be served by termination of the parental rights of the parent[.]"

¶6 For context, the State alleged, among other things, that A.G. and the child's mother were addicted to heroin and the child "tested positive for drugs" at birth. After spending approximately one month in the neonatal intensive care unit of the hospital where she was born, A.G.'s daughter was removed from her parents, both of whom later pled no contest to the allegations in the State's petition alleging their daughter was a child in need of protection or services (CHIPS). Filed eight months after the circuit court entered its CHIPS order, the State's TPR petition alleged the child's parents failed to meet the conditions ordered by the circuit court for the return of their daughter. Among other contentions, the State claimed A.G. did not seek treatment and "no call[ed], no show[ed]" multiple drug screenings. Based on the allegations, the State claimed two independent grounds for TPR:

- continuing CHIPS; and

- failure to assume parental responsibility.

See Wis. Stat. § 48.415(2), (6) (2019-20). A.G. was represented by counsel at the hearings discussed below.

¶7 At an adjourned initial appearance, the circuit court explained the nature of TPR proceedings in detail. Most relevantly, the court informed A.G. that if grounds were established, the court would proceed to the disposition phase.

5

The court explained it would hold a "contested dispositional hearing" at which:

> [W]hat we focus on is not whether there's a reason anymore, but what's [sic] we focus on instead is what's best for the kids that are involved in the case. Not what's best for anybody else. Not what's best for any of the lawyers or social workers. Not what's best for the foster parents. Not what's best for parents, but what's best for the kids that are involved in the case.
>
> . . . .
>
> If I make that unfitness finding, then we go on to the second part of the proceedings. That's that contested dispositional hearing. There we focus on what is best for the kids that are involved. So everybody gets to put on testimony and evidence and argue to me what they think is best for the kids that are involved. The State puts on testimony and evidence and tells me what they think is best. The . . . [GAL] can put on testimony and evidence and tell me what she thinks is best. Parents can do exactly the same thing. Parents have the right to put on testimony and evidence and to subpoena witnesses and to testify or remain silent themselves. Parents also have the right to confront any witness that testifies on behalf of any other party. Parents have the right to argue to me what they think is best for the kids that are involved.
>
> . . . . I then decide what outcome is best for the kids that are involved. One thing I could decide is that termination of parental rights can [sic] best for the kids that are involved. If I make that decision, that ends all legal relationship between that parent and that child. As far as the law is concerned, that parent and that child become complete strangers to each other. But that's not the only potential outcome. There are other potential outcomes that don't involve termination of parental rights.

At multiple points during this appearance, the court paused to inquire whether A.G. understood the court's explanation, and A.G. responded he did.

6

¶8  At a later hearing, A.G. pled no contest to the continuing CHIPS ground, and the failure to assume parental responsibility ground was dismissed.  During the plea colloquy between A.G. and the circuit court, A.G. stated he was 26 years old, had an 11th-grade education, could read and write English, and had no mental illness or cognitive issues that would limit his ability to understand the colloquy.  A.G. denied taking any drugs (other than a prescribed medication that did not "alter[]" his mind) or drinking alcohol within the preceding 12 hours.  He also confirmed he read the TPR petition, understood the State's allegations, and was not promised or paid anything as an inducement to plea.

¶9  The part of the plea colloquy giving rise to appellate proceedings went as follows:

Q. You understand that you do have the right to have a trial for this first half of the case, whether or not there is a legal reason to terminate your parental rights?

A. I do.

Q. And that could be a trial to the judge or a trial to a jury.  Do you understand that?

A. I do.

Q. If it were a jury it would be a 12 person jury and 10 out of 12 would have to agree in order to reach a decision.  Do you understand that?

A. I do understand.

Q. And at that trial you would have a whole bunch of rights and I'm just going to list them.  You would have the right to force the State to prove the

7

grounds by clear, convincing, and satisfactory evidence to a reasonable certainty.

You would have the right to cross-examination of your witnesses; the right to introduce evidence; the right to compel witnesses to come to court and testify for you; the right to testify yourself or remain silent, knowing, though, that silence be [sic] used against you in this kind of case. Do you understand you would have all of these trial rights?

A. I do.

Q. And do you understand that by pleading no contest you're giving those rights up?

A. I do.

Q. Now, you understand that's just the first half of the case? The second half of the case is where the [c]ourt decides is it in the child's best interest to in fact terminate your parental rights. Do you understand that distinction?

A. I understand.

Q. You understand you're not giving up your right to fight about that second half, which is what we're going to do today. Do you understand that?

A. Yes, I do.

Q. You'll have all those same trial rights today for that second half. Do you understand that?

A. Yes.

¶10 A.G.'s arguments arise from portions of this plea colloquy he considers defective. In particular, the circuit court stated, "[t]he second half of this case is where the [c]ourt decides is it in the child's best interest to in fact terminate your parental rights." The court asked, "[d]o you understand that[?]" A.G. responded "[y]es," but he now asserts

8

"the court did not inform him of the potential dispositions he faced if he entered a no contest plea." Specifically, he claims the court did not make clear that it had two options at disposition: grant the TPR petition or dismiss it. His second argument stems from the court explaining that during the grounds phase, A.G. "would have the right to force the State to prove the grounds by clear, convincing, and satisfactory evidence to a reasonable certainty." The court later stated, "[y]ou'll have all those same trial rights today for that second half." A.G. argues the later statement implied the State would have a burden of proof that termination of his parental rights would be in the child's best interest at the disposition phase because that was one of the "trial rights" identified by the court for the grounds phase.

¶11 The circuit court proceeded to ask other standard questions, confirming A.G. had spoken with his counsel about the plea. The court then asked if A.G. had any questions, to which A.G. responded, "[n]o, I do not." A.G. also said he did not need more time to think about his decision, and he and his counsel both stated that the plea was knowing, voluntary, and intelligent. After this lengthy colloquy, the court accepted A.G.'s no contest plea.

¶12 The next day, at disposition, A.G. testified in favor of reunification and continuation of the CHIPS case rather than termination. Specifically, he testified, "[m]y goal in this case is to get myself better and have my daughter returned to the household."

9

¶13 The circuit court concluded that termination of A.G.'s parental rights was in the child's best interest. Twice, the court referred to the clear and convincing standard. In summarizing the testimony of the family case manager, the court characterized the testimony as "clear, convincing, satisfactory evidence to a reasonable certainty." Moments later, the court reiterated "[t]hat's clear, convincing, satisfactory evidence to a reasonable degree of certainty more or less. I don't think there's case law that assigns a particular percentage to that standard, and I'm not either." Continuing, the court said "[the] testimony was excellent. . . . [The family case manager]'s incredibly honest, and incredibly insightful." At some points, the court used language indicative of a lower standard, e.g., "in balance, I do have to find that this termination is in the best interest of . . . [the child]."

¶14 Post disposition, A.G. filed a motion for plea withdrawal, which the circuit court denied without taking evidence. The court reasoned A.G. did not identify a defect in the plea colloquy and therefore was not entitled to an evidentiary hearing. To the extent the colloquy did not convey potential dispositions, the court determined the lengthy discussion of potential dispositions at the adjourned initial appearance satisfied any requirement. Additionally, the court noted it "actually did use a clear and convincing standard when it assessed whether it thought it was in the child's best interest to terminate the parental rights."

¶15 A.G. appealed. The court of appeals reversed the circuit court's decision and ordered the cause remanded with directions to hold an evidentiary hearing. State v. A.G., No. 2021AP1476, unpublished slip op., ¶1 (Wis. Ct. App. Feb. 15, 2022). The court of appeals concluded that "A.G. was not advised of the potential dispositions at the plea hearing" and had "alleged he did not understand the potential dispositions," so he was entitled to an evidentiary hearing. Id., ¶12. The court did not reconcile its conclusion with the circuit court's statement during the plea colloquy that "[t]he second half of this case is where the [c]ourt decides is it in the child's best interest to in fact terminate your parental rights." The court of appeals also concluded the circuit court needed to take evidence regarding A.G.'s second argument. Id., ¶16. It concluded the circuit court erred in suggesting A.G. would "have all those same trial rights today for that second half" because "[t]here is not a burden of proof placed on the State" at disposition. Id., ¶17 (citing Wis. Stat. § 48.426(2) (2019-20)). The court of appeals never considered how the State actually satisfying the clear and convincing standard might affect the analysis.

¶16 On remand, the circuit court held an evidentiary hearing. A.G. did not appear.[3] The hearing proceeded and the court reviewed the record. In a written decision, the court

---

[3] The State and the GAL argue A.G. should have been held in default for not appearing. We need not and therefore do not address this issue.

11

denied the motion, first noting A.G. had been informed during the plea colloquy that "at the disposition, the [c]ourt simply decides if it is in the child's best interest to terminate." It also noted A.G. "had previously been informed of the potential outcomes" at the adjourned initial appearance. Importantly, the court found A.G.'s testimony at the dispositional hearing showed he "understood" the potential dispositions. The court also reasoned, "[t]hroughout the disposition, the [c]ourt appears to have applied both the preponderance and the clear and convincing standards." Accordingly, it reasoned, A.G. "was not prejudiced[.]"

¶17 A.G. appealed, and the court of appeals reversed the circuit court's decision, ordering the cause remanded with directions to allow A.G. to withdraw his plea. A.G. II, No. 2022AP652, ¶1. In the court of appeals' view, the State lacked evidence establishing the validity of the plea. Id., ¶25.

## II. STANDARD OF REVIEW

¶18 This court generally considers precedent regarding plea withdrawal in the context of criminal cases to be persuasive authority regarding TPR proceedings. See Waukesha County v. Steven H., 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607 (citation omitted), modified on other grounds by St. Croix. Cnty. Dep't of Health & Hum. Servs. v. Michael D., 2016 WI 35, ¶¶3-4, 368 Wis. 2d 710, 880 N.W.2d 107. In a criminal case, this court accepts the circuit court's findings of historical fact unless they are clearly erroneous. Brown, 293

12

Wis. 2d 594, ¶19 (citing Trochinski, 253 Wis. 2d 38, ¶16). It then independently determines whether those facts demonstrate that the plea was knowing, intelligent, and voluntary. Brown, 293 Wis. 2d 594, ¶19 (citing Trochinski, 253 Wis. 2d 38, ¶16). That same standard of review applies in this case. See Steven H., 233 Wis. 2d 344, ¶42.

## III. ANALYSIS

¶19 A.G. argues he did not knowingly, voluntarily, and intelligently plead no contest as required by well-established precedent. See Kenosha Cnty. Dep't Health Servs. v. Jodie W., 2006 WI 93, ¶24, 293 Wis. 2d 530, 716 N.W.2d 845 (citing State v. Bangert, 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986)). "A parent's interest in the parent-child relationship and in the care, custody, and management of his . . . child is recognized as a fundamental liberty interest protected by the Fourteenth Amendment [to the United States Constitution]." Steven V. v. Kelly H., 2004 WI 47, ¶22, 271 Wis. 2d 1, 678 N.W.2d 856 (citing Santosky v. Kramer, 455 U.S. 745, 753 (1982)). A parent who enters a no contest plea waives several important procedural rights meant to safeguard this liberty interest, which is why such a plea must satisfy the aforementioned standard. See Brown Cnty Dep't Hum. Servs. v. Brenda B., 2011 WI 6, ¶34, 331 Wis. 2d 310, 795 N.W.2d 730 (citing Jodie W., 293 Wis. 2d 530, ¶25).

¶20 This court has established a burden-shifting scheme for TPR plea withdrawals. First, a parent must demonstrate the circuit court failed to conduct the plea colloquy in accordance

13

with Wis. Stat. § 48.422 or failed to satisfy another mandatory duty. Id., ¶36 (citing Steven H., 233 Wis. 2d 344, ¶42). The parent must also allege he "did not know or understand the information that should have been provided[.]" Id. (citing Steven H., 233 Wis. 2d 344, ¶42). If the parent satisfies his burden, the circuit court is generally required to hold an evidentiary hearing. See Brown, 293 Wis. 2d 594, ¶40 (citing Bangert, 131 Wis. 2d at 274). The State must demonstrate by clear and convincing evidence that the plea was entered knowingly, voluntarily, and intelligently despite the defective colloquy.[4] Brenda B., 331 Wis. 2d 310, ¶36 (citing Steven H., 233 Wis. 2d 344, ¶42). While a plea's validity is based on the parent's understanding at the time the plea was entered, events before and after the plea can inform a court's analysis. See State v. Finley, 2016 WI 63, ¶44, 370 Wis. 2d 402, 882 N.W.2d 761; Bangert, 131 Wis. 2d at 274-75.

¶21 We assume A.G. satisfied his burden. First, the court of appeals determined A.G. demonstrated the plea colloquy was defective; therefore, it ordered the circuit court to hold an evidentiary hearing. Second, the circuit court acknowledged it imposed a burden of proof at disposition—even though no such burden exists. We therefore consider whether the State proved

---

[4] The GAL argues the circuit court should be allowed to look at the full record in determining whether a parent has made a "prima facie case" for plea withdrawal. We do not address this issue because an evidentiary hearing was held in this case.

14

by clear and convincing evidence that A.G.'s plea was validly entered.

¶22 Notwithstanding our assumption, we nevertheless examine the plea colloquy because A.G. grounds his arguments in potential errors during it. Understanding whether the record as a whole refutes his arguments requires scrutinizing the colloquy.

¶23 Wisconsin Stat. § 48.422(7)(a) provides: "Before accepting an admission of the alleged facts in a [TPR] petition, the [circuit] court shall: (a) Address the parties present and determine that the admission is made voluntarily with understanding of the nature of the acts alleged in the petition and the potential dispositions." We assume a no contest plea is "an admission of the alleged facts[.]" § 48.422(7). A.G. does not argue the court failed to determine that he understood the acts alleged in the petition——he argues the court failed to inform him of potential dispositions. Although this statute requires a circuit court to "determine" that a no contest plea is entered "with understanding" of "the potential dispositions," it does not require specific words be used. The statute also does not mention a burden of proof at disposition; however, the court of appeals has held:

> [I]n order for the court's explanation of potential dispositions to be meaningful to the parent, the parent must be informed of the statutory standard the court will apply at the second stage. That is, the court must inform the parent that "[t]he best interests of the child shall be the prevailing factor

15

considered by the court in determining the disposition[.]"

Oneida Cnty. Dep't of Soc. Servs. v. Therese S., 2008 WI App 159, ¶16, 314 Wis. 2d 493, 762 N.W.2d 122 (quoting Wis. Stat. § 48.426(2) (2005-06)) (second modification in the original).

A. A.G. Understood His Parental Rights Could Be Terminated.

¶24 In this case, the circuit court seemingly informed A.G. of potential dispositions as required by Wis. Stat. § 48.422(7)(a). During the plea colloquy, the circuit court explicitly explained "[t]he second half of the case is where the [c]ourt decides is it in the child's best interest to in fact terminate your parental rights." Essentially, A.G. contends the colloquy was defective because the court did not specify that "[t]he second half of the case is where the [c]ourt decides is it in the child's best interest to in fact terminate your parental rights or not." The omission of "or not," A.G. claims, makes the court's statement "somewhat ambiguous" by failing to explicitly say the court must make an "either/or" decision: either terminate the parental rights or dismiss the TPR petition. A.G. claims he may have mistakenly believed the court at disposition could order something between terminating parental rights and dismissing the petition.

¶25 At oral argument, A.G.'s counsel clarified A.G.'s position regarding the content of the plea colloquy on potential dispositions:

THE COURT: Which disposition did the court not review?

16

A.G.'s COUNSEL: . . . [S]o at the plea hearing in this case, what the court said to A.G. is that during the disposition phase "the [c]ourt decides is it in the child's best interest to in fact terminate your parental rights." I don't believe that statement conveys the potential dispositions in a TPR case. That statement does not convey to the parent that the court has two options. And those options are basically all or nothing. Either the court terminates the parent's right or the court dismisses the petition. And the court did not specifically tell A.G. that those were the only two options that it had under the statute.

THE COURT: This feels like magic words to me. . . . It feels like you're asking circuit court judges to say magic words, to thread a needle with a really small eye. . . . I just feel like your argument really has a lot of like, if the court doesn't say these exact words, then there's no way the parent could understand what's happening . . . .

A.G.'s COUNSEL: . . . . [W]hat the court said here left it somewhat ambiguous. . . . [A] parent hearing what the court said here could think that potentially there's some middle ground disposition where the court hears all the testimony and evidence at disposition and the court makes a decision to just hold this open for a length of time to let the parent . . . get their life back on track.

. . . .

THE COURT: So what do you want us to do about it? . . . . In an opinion, what are you asking us to say? That courts

17

> must list out, "I'm going to decide (1) whether your rights will be terminated; or (2) whether they will not be?"
>
> A.G.'s COUNSEL: I believe there's cases interpreting the options that the court has indicating that a court has to tell a parent that it has to make one of two decisions in the case, terminate or dismiss the petition.
>
> . . . .
>
> THE COURT: [I]f the court says, "there are two potential dispositions, grant the petition to terminate your parental rights or not grant your petition to terminate parental rights," that's not sufficient?
>
> A.G.'s COUNSEL: No, I think that seems sufficient because its putting the case into the two options[.]

¶26 A.G.'s argument seems to be anchored in a misreading of Oneida County Department of Social Services v. Therese S., 314 Wis. 2d 493. In that case, the court of appeals held, "a court must inform the parent that at the second step of the process, the court will hear evidence related to the disposition and then will either terminate the parent's rights or dismiss the petition if the evidence does not warrant termination." Id., ¶16. In reply, the State references Brown County Department of Human Services v. Brenda B., 331 Wis. 2d 310. In that case, while discussing Therese S., this court held "the parent must be informed of the two independent dispositions available to the circuit court. That is, the court may decide between dismissing the petition and terminating parental

18

rights." Id., ¶56. A.G. argues the colloquy was defective because the circuit court did not precisely inform him of the two "independent dispositions." See id.

¶27 A.G. places far too much weight on a single sentence from Therese S., and he does not address Brenda B at all. In Brenda B., the circuit court used the language A.G. would require of all circuit courts, specifically, "I can either grant the petition to terminate your parental rights or dismiss the petition to terminate your parental rights." Id., ¶12. This court deemed that statement sufficient, distinguishing it from an insufficient explanation in Therese S., in which the circuit court said, "[you're] admitting the grounds for termination but still leaving open the question as to what's gonna happen, the disposition. . . . [I]t hasn't been decided yet what we're going to do. Your termination is not actually entered today. We have more work to do to decide what to do." Id., ¶54 (quoting Therese S., 314 Wis. 2d 493, ¶14). The circuit court's statement in A.G.'s case is more like the sufficient statement from Brenda B. because it informed A.G. that at disposition the court may decide to terminate A.G.'s parental rights, or, by negative implication, may decide not to terminate his rights. "[I]s it in the child's best interest to in fact terminate your parental rights" strongly implies a binary, yes/no, either/or decision. The court described the dispositional options for A.G. with greater clarity than in Therese S., in which that court rather vaguely communicated that an unspecified disposition would be forthcoming after additional work.

19

¶28 In Brenda B., this court emphasized that a circuit court need not "inform parents in detail of all potential outcomes" because that requirement would be "unduly burdensome" and potentially "confuse or mislead rather than . . . inform." Id., ¶¶55-56 (quoting Therese S., 314 Wis. 2d 493, ¶17). Although this court said "the parent must be informed of the two independent dispositions available to the circuit court," this court never suggested that a failure to state the potential dispositions in explicit either/or terminology would automatically render a plea colloquy defective. Id., ¶56. Imposing such a requirement would conflict with our longstanding rejection of requiring circuit courts to utter "magic words" to satisfy statutory commands.

¶29 "Magic words" is a colloquial phrase in legal parlance describing a party's request to prioritize form over substance. This court strongly disfavors magic words. See, e.g., State v. Lepsch, 2017 WI 27, ¶36, 374 Wis. 2d 98, 892 N.W.2d 682 (rejecting in the context of a circuit court inquiring about juror bias); State v. Wantland, 2014 WI 58, ¶33, 355 Wis. 2d 135, 848 N.W.2d 810 (rejecting in the context of withdrawing consent under the Fourth Amendment to the United States Constitution). In Brenda B., this court rejected the parent's argument that the plea colloquy was defective for not explicitly informing the parent that the parent was waiving a "constitutional" right: "the [circuit] court need not explain that the right to parent is a constitutional right. What is important is that the parent understands the import of the

20

rights at stake rather than the source from which they are derived." 331 Wis. 2d 310, ¶46. In this case, the record confirms A.G. understood the "stake[s]."

¶30 Based on the foregoing, we doubt the plea colloquy was defective for not explicitly explaining the two potential dispositions. We need not, however, make that call. The procedural posture of this case allows for a narrower holding. The circuit court held an evidentiary hearing and found A.G. understood potential dispositions based on his testimony at the dispositional hearing, which was conducted the day after the plea colloquy. The court's finding is not clearly erroneous; therefore, we accept it as true. See Brown, 293 Wis. 2d 594, ¶19 (citing Trochinski, 253 Wis. 2d 38, ¶16). Additionally, the court noted the thorough overview of TPR proceedings the court had provided at the adjourned initial appearance predating the plea colloquy. During the colloquy, both A.G. and his counsel represented to the court that A.G. was entering the plea knowingly, voluntarily, and intelligently.

¶31 Although not relied upon by the circuit court, during the plea colloquy A.G. confirmed he read the TPR petition, which made exceedingly clear that his parental rights were at stake. In State v. Taylor, a criminal defendant was told he faced a potential six-year term of imprisonment if he pled, when in fact he faced a total of eight years. 2013 WI 34, ¶¶2, 38-39, 347 Wis. 2d 30, 829 N.W.2d 482. He was sentenced to six years after pleading no contest. Id., ¶3. This court held, "on this record, a failure to discuss the additional two-year repeater

21

penalty enhancer at the plea hearing is an insubstantial defect." Id., ¶34. The court emphasized, "[t]he record is replete" with evidence that the defendant "was aware" of the potential term of imprisonment, largely based on a complaint filed on May 8, 2009, which the defendant said he read and understood during the plea colloquy on August 23, 2010. Id., ¶¶35-39. This court reasoned, "[t]o conclude that Taylor was not aware of the maximum eight-year term of imprisonment, we would have to assume . . . . that Taylor misrepresented to the court that he had received, read, and understood the complaint[.]" Id., ¶39. We presume A.G. answered truthfully when he said he read the TPR petition, which is titled: **"Petition for Termination of Parental Rights**[.]"

¶32 Additionally, A.G. confirmed during the plea colloquy that he had spoken with his counsel about the plea. The court then asked if A.G. had any questions, to which A.G. responded, "[n]o, I do not." A.G. also denied needing more time to think about his decision. In his concurrence in Taylor, Justice David T. Prosser noted, "[t]here is a very high likelihood that . . . [the defendant]'s attorney . . . explained the meaning of eight years of imprisonment[.]" Taylor, 347 Wis. 2d 30, ¶83 n.5 (Prosser, J., concurring). Similarly, it is improbable A.G.'s counsel neglected to tell A.G. that his parental rights could be terminated. We reject A.G.'s first argument because the record as a whole, before the plea

22

colloquy, during the colloquy, and after, confirms A.G. understood the potential dispositions when he entered his plea.[5]

_____

[5] The point the concurrence tries to make is unclear, considering its analysis of A.G.'s first argument mirrors our own. We "assume" A.G. made a prima facie case. Supra, ¶21. So does the concurrence but it "add[s]" a "caveat": "[t]he briefing on this point was not especially helpful. With the benefit of fuller assistance from the parties, it may be that our hands are tied in some way." See Concurrence, ¶¶42, 43 n.1. We then state the issue as follows: "whether the State proved by clear and convincing evidence that A.G.'s plea was validly entered." Supra, ¶21. The concurrence introduces the issue using nearly identical language: "whether the State demonstrated by clear and convincing evidence that the plea was knowing, voluntary, and intelligent." Concurrence, ¶42. Both opinions express skepticism that an error occurred in the colloquy. Compare supra, ¶30 ("[W]e doubt the plea colloquy was defective for not explicitly explaining the two potential dispositions."), with concurrence, ¶43 n.1 ("[O]n both issues, the evidence of a facial deficiency in the plea colloquy was weak at best[.]"). Both opinions examine the full record and determine A.G.'s first issue is without merit. See concurrence, ¶44 ("The lead opinion recites additional evidence from the record both before and after the plea that I agree may be considered. This evidence erases any doubt that the potential dispositions were sufficiently communicated, and by implication, sufficiently understood, when A.G. entered his plea."). Inexplicably, the concurrence rationalizes its unwillingness to join this opinion's analysis on the first issue by complaining about "inconsistencies" it never identifies.

The concurring justices disserve the people of Wisconsin by blocking a clean precedential decision on A.G.'s first argument without cause. Arguments analogous to A.G.'s are recurring in Wisconsin; our guidance in this important area of law is needed. See generally State v. S.S., Nos. 2022AP1179 & 2022AP1180, unpublished slip op., ¶19 (June 7, 2023) ("Relying on Therese S., S.S. asserts that the circuit court's colloquy must convey to the parent that there are only two legal outcomes at a dispositional hearing: termination of parental rights or dismissal of the TPR petitions."). Not a single justice who refuses to join any portion of this opinion even attempts to point out any flaw in our analysis of A.G.'s first argument; nevertheless, only one justice joins it. See dissent, ¶55 ("I focus solely on A.G.'s second argument[.]"). "[I]t is this

23

B. Assuming A.G.'s Reading of the Plea Colloquy Is Reasonable, the Burden of Proof Error Was an Insubstantial Defect.

¶33 We also reject A.G.'s second argument regarding the burden of proof at the dispositional hearing.[6] As a preliminary

court's function to develop and clarify the law." State ex rel. Wis. Senate v. Thompson, 144 Wis. 2d 429, 436, 424 N.W.2d 385 (Wis. 1988) (citations omitted). "Part of our obligation as supreme court justices is to take complicated legal issues and decide them in a way that simplifies and explains them." State v. Branter, 2020 WI 21, ¶42, 390 Wis. 2d 494, 939 N.W.2d 546 (Roggensack, C.J., concurring). The concurrence does not fulfill this obligation. If a justice deprives the public of clear precedent, a straightforward, coherent explanation of why is warranted. Doing so not only serves the public but facilitates a resolution of any disagreements for the purpose of establishing clear precedent. We do not sit as seven courts of one but as one court of seven (or in this case six). See, e.g., Friends of Frame Park, U.A. v. City of Waukesha, 2022 WI 57, ¶3, 403 Wis. 2d 1, 976 N.W.2d 263.

[6] The concurrence contradicts itself in analyzing A.G.'s second argument. First, the concurrence says: "Procedurally, the question before us concerns step two: whether the State demonstrates by clear and convincing evidence that the plea was knowing, voluntary, and intelligent. This is because the court of appeals previously determined A.G. made the prima facie showing and was therefore entitled to an evidentiary hearing." Concurrence, ¶42 (citing State v. A.G., No. 2021AP1476, unpublished slip op., ¶21 (Wis. Ct. App. Feb. 15, 2022)). Next, the concurrence asserts, "A.G.'s argument rests on the premise that the most reasonable reading . . . [of the colloquy transcript] is that the circuit court communicated a clear and convincing evidence burden of proof would apply at the disposition. But the circuit court never said that." Id., ¶47. If the circuit court "never said that," then A.G. did not make a prima facie case. Although on the first issue we express skepticism as to whether A.G. made a prima facie case, we do not resolve the issue because there is no need to do so. Considering the record as a whole avoids the inconsistencies undermining the analysis set forth in the concurrence, which confusingly considers "step two" notwithstanding the concurrence's implication that A.G. never made a prima facie case. Additionally, the concurrence cites no authority for the proposition that A.G.'s reading needs to be "the most reasonable." Finally, A.G.'s reading of the colloquy, in light

24

matter, A.G. correctly argues Wis. Stat. § 48.426(2) does not impose a burden on the State to prove that termination is in the child's best interests.[7] The statute provides only that "[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition of all proceedings under this subchapter." § 48.426(2). We are unaware of any Wisconsin decision analyzing whether the evidence regarding the best interests of the child must meet a particular burden. See State v. L.J., Nos. 2017AP1225, 2017AP1226 & 2017AP1227, unpublished slip op. ¶21 (Wis. Ct. App. May 1, 2018)

---

of the entire record, appears pretty reasonable considering the circuit court referenced the clear and convincing standard at disposition and later acknowledged it in fact applied that standard.

[7] The dissent claims "[t]his is a debatable conclusion." Dissent, ¶58 n.3. It cites three foreign state supreme court decisions, one of which merely noted, "the clear and convincing standard might be constitutionally mandated" at disposition. See B.T.B. v. V.T.B., 472 P.3d 827, 838 n.11 (Utah 2020) (emphasis added). The dissent also quotes a South Dakota Supreme Court decision, which misquoted a United States Supreme Court decision, Santosky v. Kramer, as follows: "The trial court must find by 'clear and convincing evidence that termination of parental rights is in the best interests of the child.'" In re D.H., 354 N.W.2d 185, 188 (S.D. 1984) (attributing the quote to Santosky v. Kramer, 455 U.S. 745 (1982); citing In re S.L., 349 N.W.2d 428 (S.D. 1984); In re S.H., 323 N.W.2d 851 (S.D. 1982)). That quote does not appear in Santosky. The South Dakota decision placed two other decisions in the string citation, but neither of those decisions contain the quote either. The dissent also cites a nearly two-decade old student-authored law review comment. See Brian C. Hill, Comment, The State's Burden of Proof at the Best Interests Stage of a Termination of Parental Rights, 2004 U. Chi. Legal Forum 557, 576-84. A Westlaw search reveals this comment has never been cited in a legal opinion.

25

("L.J. identifies no case in which a determination of the best interests of the child has been analyzed in terms of whether the burden of proof has been satisfied. . . . The legislature imposed no burden of proof in the statute, and the determination of the child's best interests does not turn on distinctions between levels of proof."). The "polestar" at a dispositional hearing is simply the best interests of the child. Brenda B., 331 Wis. 2d 310, ¶33 (quoting Sheboygan Cnty. Dep't of Health & Hum. Servs. v. Julie A.B., 2002 WI 95, ¶30, 255 Wis. 2d 170, 648 N.W.2d 402).

¶34 Regardless, A.G.'s second argument fails under Taylor, 347 Wis. 2d 30 (majority op.). Although this court emphasized the defendant knew, based on the record, that he faced eight years, it also emphasized, "in any event, . . . [the defendant] was verbally informed by the court at the plea hearing of the sentence that he actually received. . . . [The] sentence . . . did not exceed the six-year term of imprisonment that the court, at the plea hearing, specifically informed him that he could receive." Id., ¶¶39, 42; see also id., ¶28 ("[A]t the plea hearing, the circuit court verbally informed . . . [the defendant] of the six-year term of imprisonment to which he was ultimately sentenced. As a result, . . . [the defendant]'s plea was entered knowingly, intelligently, and voluntarily, and it was not a violation of . . . [the defendant]'s due process rights to deny his motion to withdraw his no contest plea."); id., ¶52 ("[T]he circuit court informed . . . [the defendant] that he could receive a maximum term of imprisonment of six

26

years. . . . [The defendant] received a six-year term of imprisonment. In other words, . . . [the defendant] received a sentence that he was verbally informed he could receive.").

¶35 In Taylor, quoting an earlier decision of this court, this court explained that "[r]equiring an evidentiary hearing for every small deviation from the circuit court's duties during a plea colloquy is simply not necessary for the protection of a defendant's constitutional rights." Id., ¶33 (quoting State v. Cross, 2010 WI 70, ¶32, 326 Wis. 2d 492, 786 N.W.2d 64). As noted in that earlier decision, not every "insubstantial defect[]"——i.e., technical legal error——renders a plea invalid. Cross, 326 Wis. 2d 492, ¶32.

¶36 Like the defendant in Taylor, A.G. received what the circuit court told him he would receive; the State was held to a burden of proof the law does not require, but the State met that burden. At disposition, the court explicitly referenced the clear and convincing standard. In denying the motion for plea withdrawal without an evidentiary hearing, the court explained, "[t]he [c]ourt actually did use a clear and convincing standard when it assessed whether it thought it was in the child's best interest to terminate the parental rights." After the evidentiary hearing, the court noted in its written decision that it seems to have held the State to both a clear and convincing and a preponderance of the evidence standard. Regardless, the court emphasized the State satisfied the higher clear and convincing standard, as expressed in the dispositional hearing transcript. The mere fact the court also stated "in

27

balance" termination was in the best interests of the child does not show the court applied a burden lower than clear and convincing evidence.  A.G. was not inhibited from weighing the pros and cons of entering this particular no contest plea by being told the State would have to satisfy a particular burden of proof because the State was actually held to and did satisfy that burden.[8]

¶37 Our holding regarding the burden of proof argument presupposes that events subsequent to the plea colloquy can illuminate whether a plea was entered knowingly, voluntarily, and intelligently.  In State v. Finley, this court explained the State "bore the burden of proving, by clear and convincing

---

[8] The dissent complains we are "importing a harmless error standard[.]"  Dissent, ¶70.  Not so.  Although the dissent mischaracterizes our holding as "A.G. did not know the statutory standard that applies at the dispositional phase," id., we actually hold he did know the standard this particular circuit court would apply——because the court applied the standard it said it would.  Accordingly, as in Taylor, the error did not render the plea unknowing, unintelligent, or involuntary.  2013 WI 34, ¶¶41–42, 347 Wis. 2d 30, 829 N.W.2d 482.  A harmless error analysis would instead consider whether and to what extent the information provided at the plea colloquy caused A.G. to enter a plea he would not otherwise have entered.  Cf. State v. Barnes, 2023 WI 45, ¶29, __ Wis. 2d __, 990 N.W.2d 759.  We do not hold that A.G. would surely have entered a no contest plea regardless of the information he received during the plea colloquy.

Due process is not a game of gotcha to be sprung on the State.  A.G. benefitted from the circuit court holding his opponent, the State, to a burden of proof the law did not require the State to meet.  A.G. claims he considered this when weighing the pros and cons of pleading.  To permit him to withdraw his plea at this stage would make a mockery of a very serious TPR proceeding.

evidence," that a criminal defendant "knew the potential punishment he faced . . . at the time of the plea acceptance." 370 Wis. 2d 402, ¶44 (emphasis added). Our holding in this case is consistent with Finley. A.G. claims he knew, at the time of the plea acceptance, the State would be required to satisfy the clear and convincing standard. The State was then held to that standard even though it did not apply. The error could have been consequential, but it became insubstantial when the circuit court actually held the State to the clear and convincing standard. Given this subsequent development, A.G.'s knowledge at the time of the plea permitted him to accurately weigh the pros and cons of entering this specific plea. However he calculated the odds of a favorable outcome at disposition, to the extent his calculation depended on the State being held to the clear and convincing standard, he calculated correctly. Had the State not satisfied this burden and the circuit court nonetheless terminated A.G.'s parental rights, we might have a different case.[9]

---

[9] The dissent contends this court in Finley held Taylor has no relevance as applied to cases in which an evidentiary hearing was held. Dissent, ¶67. A fair reading of Finley does not support the dissent's assertion.

In Finley, a criminal defendant was told the maximum statutory punishment was lower than it actually was and then sentenced to more time than he was told he would face. 2016 WI 63, ¶10, 370 Wis. 2d 402, 882 N.W.2d 761. The question facing this court was one of remedy: the State argued the sentence should be commuted, but the defendant sought plea withdrawal. Id., ¶¶9-10. After an evidentiary hearing, the State conceded the defendant "did not know the potential punishment he faced

29

### IV. CONCLUSION

¶38 We hold that A.G. knowingly, voluntarily, and intelligently pled no contest to the continuing CHIPS ground for terminating his parental rights. The circuit court found A.G. demonstrated he understood potential dispositions through his testimony at the dispositional hearing, which was conducted one day after the plea colloquy. Based on the record, the court's findings are not clearly erroneous. Although the court mistakenly imposed a clear and convincing evidentiary burden on the State in determining whether terminating A.G.'s parental rights was in the child's best interests, the court actually held the State to that burden and concluded it was met. The court's mistake therefore was an insubstantial defect. The court of appeals erred in permitting A.G. to withdraw his plea.

---

when he entered his plea." Id., ¶85. This court held the defendant was entitled to withdraw his plea. Id., ¶95.

Although this court in Finley noted that "no evidentiary hearing was needed" in Taylor, it did not suggest Taylor has no bearing on a case in which one has been held. See id., ¶84. If Finley does stand for the proposition the dissent suggests, it is simply wrong. See id., ¶153 (Ziegler, J., dissenting) ("There is a principle present in . . . Taylor—namely, that incorrect or insufficient knowledge about an aspect of a plea does not necessarily invalidate the entire plea[.]").

In this case, an evidentiary hearing was held, in which the circuit court reiterated that it actually applied the clear and convincing standard, which has facilitated our review. The mere fact that one was held, however, does not render the defect somehow more serious; rather, the record of the evidentiary hearing demonstrates why the defect was insubstantial.

*By the Court.*——The decision of the court of appeals is reversed.

¶39 BRIAN HAGEDORN, J. *(concurring).* A.G. argues that the no-contest plea he entered in his termination of parental rights (TPR) proceeding was not knowing, voluntary, and intelligent for two independent reasons. First, he asserts the circuit court failed to advise him of the possible dispositions that it could enter after accepting his plea. Second, A.G. contends the circuit court failed to explain the statutory standard it was required to apply at the dispositional phase of the TPR proceeding. Neither argument wins the day.

¶40 Contested TPR proceedings involve a two-step process: (1) a fact-finding hearing to determine if "grounds exist for the termination of parental rights," and (2) the dispositional hearing where the circuit court determines whether the rights should in fact be terminated. See Wis. Stat. §§ 48.424, 48.427. Here, A.G. pled no-contest that grounds existed to terminate his parental rights. On appeal, he contends that his plea at the grounds phase was not knowing, voluntary, and intelligent based on what he was told (or not told) about the dispositional hearing.

¶41 We analyze whether A.G. can withdraw his plea utilizing a two-step process. Waukesha County v. Steven H., 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607, modified on other grounds by St. Croix Cnty. Dep't of Health & Hum. Servs. v. Michael D., 2016 WI 35, ¶¶3-4, 368 Wis. 2d 170, 880 N.W.2d 107. First, the parent "must make a prima facie showing that the circuit court violated its mandatory duties and he must allege that in fact he did not know or understand the

1

information that should have been provided at the" hearing. Id.
This prima facie showing will generally focus on the plea
colloquy itself to determine whether certain requirements were
not followed. See State v. Clark, 2022 WI 21, ¶¶13-16, 401
Wis. 2d 344, 972 N.W.2d 533 (explaining the defendant's burden).
Second, if the defendant makes this showing, the burden shifts
to the State to demonstrate by clear and convincing evidence
that even given the facial deficiencies, the parent's plea was
knowing, voluntary, and intelligent. Steven H., 233
Wis. 2d 344, ¶42. This usually involves the consideration of
additional evidence at a hearing. State v. Hoppe, 2009 WI 41,
¶47, 317 Wis. 2d 161, 765 N.W.2d 794. At this stage, the
circuit court considers all new evidence along with "the entire
record" to ascertain if the parent's plea was knowing,
voluntary, and intelligent. Steven H., 233 Wis. 2d 344, ¶42.

¶42 Procedurally, the question before us concerns step
two: whether the State demonstrated by clear and convincing
evidence that the plea was knowing, voluntary, and intelligent.
This is because the court of appeals previously determined A.G.
made the prima facie showing and was therefore entitled to an
evidentiary hearing. State v. A.G. (A.G. I), No. 2021AP1476,
unpublished slip op., ¶21 (Wis. Ct. App. Feb. 15, 2022). The
State did not challenge this decision, and the case was remanded
back to the circuit court for a hearing. That's when the case
transformed into something of a unicorn. A.G. did not appear at
the scheduled evidentiary hearing, so neither his testimony nor
any other testimony was introduced. Instead, the State moved

2

into evidence all the transcripts in the case and relied on the transcripts alone to argue that it had proven A.G.'s plea was knowing, voluntary, and intelligent. The circuit court concluded the State satisfied its burden, but the court of appeals reversed and remanded with instructions to permit A.G. to withdraw his plea. State v. A.G. (A.G. II), No. 2022AP652, unpublished slip op., ¶25 (Wis. Ct. App. July 12, 2022). We granted review of this second appeal.

¶43 Our review involves an examination of substantially the same transcript evidence that the court of appeals had when it concluded A.G. made the initial prima facie case. But at this stage, we must independently determine whether the plea was knowing, voluntary, and intelligent. Hoppe, 317 Wis. 2d 161, ¶45. Thus, even though the court of appeals may have had much of the same evidence available to it when it determined A.G. made a prima facie case, our standard of review suggests we can come to a different legal conclusion when conducting our independent analysis under step two.[1]

---

[1] I add one caveat to this conclusion, however. The briefing on this point was not especially helpful. With the benefit of fuller assistance from the parties, it may be that our hands are tied in some way.

The dissent seems to think so when it employs a law-of-the-case rationale to A.G.'s second argument. But on both issues, the evidence of a facial deficiency in the plea colloquy was weak at best, and the broader plea withdrawal claim even weaker when the full spectrum of evidence in a stage two analysis is considered. Given our standard of review, I don't understand why the conclusion that A.G. made a prima facie case——reached by a lower court in a different appeal focusing primarily on the plea colloquy alone——should transform into a binding conclusion for a higher court considering more evidence and conducting an independent review of whether the State met its burden.

¶44 Turning to this analysis, A.G. first contends the circuit court failed to advise him of the possible dispositions of the proceeding consistent with Wis. Stat. § 48.422. See § 48.422(7)(a) (providing the circuit court must "determine that the admission is made voluntarily with understanding of . . . the potential dispositions"). And to enter a knowing, voluntary, and intelligent plea the defendant must be informed that the court can either dismiss the petition or terminate parental rights. See Brown Cnty. Dep't of Hum. Servs. v. Brenda B., 2011 WI 6, ¶56, 331 Wis. 2d 310, 795 N.W.2d 730; see also Wis. Stat. § 48.427(2), (3). As I read the record, the circuit court did so when it said that during the dispositional phase, it would decide if it was "in the child's best interest to in fact terminate [A.G.'s] parental rights." The lead opinion recites additional evidence from the record both before and after the plea that I agree may be considered. This evidence erases any doubt that the potential dispositions were sufficiently communicated, and by implication, sufficiently understood, when A.G. entered his plea. Accordingly, I conclude the State proved by clear and convincing evidence that A.G.'s plea was knowing, voluntary, and intelligent with respect to the possible dispositions of the TPR proceeding.

---

The lead opinion is equally unclear. While it seems to agree we can come to an independent conclusion on A.G.'s first argument, it criticizes this opinion for applying the same analytical approach to A.G.'s second argument. Given the inconsistencies in the lead opinion and the potential for confusion, I do not join its analysis.

4

¶45 A.G. also argues the circuit court failed to explain the statutory standard it was required to apply to the dispositional phase. Wisconsin Stat. § 48.422 does not directly require disclosure of this standard when the circuit court accepts a no-contest plea. However, a published court of appeals decision states that "the parent must be informed of the statutory standard the court will apply at the second stage" "in order for the court's explanation of potential dispositions to be meaningful." Oneida Cnty. Dep't of Soc. Servs. v. Therese S., 2008 WI App 159, ¶16, 314 Wis. 2d 493, 762 N.W.2d 122. Wisconsin Stat. § 48.426 states that the standard is the "best interests of the child"; no burden of proof is specified.

¶46 A.G.'s argument on this point relies on a strained reading of the record. The circuit court explained during the plea colloquy for the grounds phase that A.G. would be giving up a variety of trial rights, including "the right to force the state to prove the grounds by clear, convincing, and satisfactory evidence to a reasonable certainty." The circuit court later communicated that during the dispositional phase, the court would determine whether it is "in the child's best interest to in fact terminate your parental rights." And in the dispositional phase, A.G. would still have his trial rights. In other words, A.G. was not giving up his trial rights in the dispositional phase by pleading in the grounds phase.

¶47 A.G.'s argument rests on the premise that the most reasonable reading of this exchange is that the circuit court communicated a clear and convincing evidence burden of proof

5

would apply at the dispositional phase. But the circuit court never said that. The circuit court merely said that standard applied "to prove the grounds." When it pivoted to explaining the dispositional phase, the circuit court followed the statutory language and explained that it would render a decision based on the best interests of the child. Sure, the circuit court could have been a bit more precise. But the record shows A.G. was informed ten months before entering his plea that in the second phase of the TPR proceeding, the focus shifted to what was in the child's best interest. Thus, reviewing the record independently and as a whole, in the face of A.G.'s argument that he was incorrectly informed of the statutory standard governing the dispositional hearing, the State met its burden to prove by clear and convincing evidence that A.G.'s plea was knowing, voluntary, and intelligent.[2]

¶48 For these reasons, I respectfully concur.

¶49 I am authorized to state that Justice JILL J. KAROFSKY joins this concurrence.

---

[2] The lead opinion concludes the same, but rests its conclusion in part on the basis that the circuit court held the State to the clear and convincing standard during the dispositional phase. Like the dissent, I do not understand why that would be relevant to whether the State proved that A.G.'s plea was knowing, voluntary, and intelligent.

¶50 REBECCA FRANK DALLET, J. *(dissenting).* The Constitution requires that pleas be knowingly, intelligently, and voluntarily entered. State v. Bangert, 131 Wis. 2d 246, 257, 389 N.W.2d 12 (1986). Accordingly, when we evaluate whether a plea met that constitutional standard, we must focus on what the person entering the plea knew "at the time of the plea acceptance." See State v. Finley, 2016 WI 63, ¶44, 370 Wis. 2d 402, 882 N.W.2d 761. The lead opinion fails at this basic task, focusing instead on what A.G. knew many months before entering his plea and on what happened after. Worse yet, if the lead opinion's approach were adopted, it would upset our well-settled approach to plea-withdrawal claims in the process. Because I conclude that A.G. is entitled to withdraw his plea, I respectfully dissent.

I

¶51 The State petitioned to terminate A.G.'s parental rights to his daughter. Termination of parental rights (TPR) cases implicate parents' fundamental right to raise their children, see Santosky v. Kramer, 455 U.S. 745, 753 (1982), and are thus "among the most consequential of judicial acts," involving "'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" Steven V. v. Kelley H., 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (quoting Evelyn C.R. v. Tykila S., 2001 WI 110, ¶20, 246 Wis. 2d 1, 629 N.W.2d 768). For that reason, numerous statutory and constitutional protections apply in TPR cases.

1

¶52 These protections apply at each of the two phases of a TPR case. The first or "grounds" phase concerns whether one or more of the statutory grounds for termination of parental rights enumerated in Wis. Stat. § 48.415(1)-(10) exist. See Kenosha Cnty. Dep't of Human Servs. v. Jodie W., 2006 WI 93, ¶10 n.10, 293 Wis. 2d 530, 716 N.W.2d 845. At this phase, the Constitution requires "fundamentally fair procedures," including a hearing and proof by the State[1] of the grounds for termination by clear and convincing evidence. Santosky, 455 U.S. at 748, 753-54. The second or "dispositional" phase concerns "whether it is in the child's best interest to terminate parental rights." Jodie W., 293 Wis. 2d 530, ¶10 n.10. At this phase, "[t]he parent has the right to present evidence and be heard," and if "'the evidence does not warrant the termination of parental rights,'" then the court may dismiss the petition. Evelyn C.R., 246 Wis. 2d 1, ¶23 (quoting Wis. Stat. § 48.427(2)).

A

¶53 In this case, A.G. pleaded no contest at the grounds phase, effectively conceding the State's allegation that his daughter was a child in need of protection or services (CHIPS)——one of the statutory grounds for termination of parental rights. See Wis. Stat. § 48.415(2). This was a meaningful concession, since it meant A.G. was giving up his constitutional right to

---

[1] Counties may also file TPR petitions, but for simplicity I will refer to the petitioner as the State throughout this opinion.

2

hold the State to its burden of proving that he was an unfit parent by clear and convincing evidence. See Evelyn C.R., 246 Wis. 2d 1, ¶22 (explaining that at the grounds phase "the parent's rights are paramount"). To ensure that he understood the important rights he was waiving, the circuit court conducted a colloquy before accepting A.G.'s plea. See Wis. Stat. § 48.422(7); see also Brown Cnty. Dep't of Human Servs. v. Brenda B., 2011 WI 6, ¶34, 331 Wis. 2d 310, 795 N.W.2d 730 ("A parent who chooses to enter a no contest plea during [the grounds] phase is giving up valuable protections and must have knowledge of the rights being waived by making the plea.").

¶54 During that colloquy, the circuit court explained what it called A.G.'s "trial rights" during the grounds phase. Those included the right to a trial before the court or a jury to determine whether grounds to terminate his parental rights existed. At that trial, the circuit court said "[A.G.] would have a whole bunch of rights," including: (1) "the right to force the State to prove the grounds by clear, convincing, and satisfactory evidence to a reasonable certainty;" (2) "the right of cross-examination of your witnesses;" (3) "the right to introduce evidence;" (4) "the right to compel witnesses to come to court and testify;" and (5) "the right to testify . . . or remain silent, knowing, though, that silence be [sic] used against you in this kind of case." After A.G. confirmed that he understood those "trial rights," the circuit court then told A.G. about the dispositional phase: "[t]he second half of the case is where the [c]ourt decides is it in the child's best

3

interest to in fact terminate your parental rights." At that phase, the circuit court said, A.G. would have "all those same trial rights."

¶55 A.G. argues that there were two defects in this colloquy. First, he asserts that the circuit court did not inform him of the two potential outcomes of the dispositional phase——granting the petition and terminating his parental rights or dismissing the petition.[2] See § 48.422(7)(a) (requiring the circuit court, before entering a plea, to ensure it is made "with understanding of . . . the potential dispositions"). Second, A.G. contends that at the time of his plea, the circuit court did not inform him of the correct statutory standard that applies at the dispositional phase. See Oneida Cnty. Dep't of Soc. Servs. v. Therese S., 2008 WI App 159, ¶16, 314 Wis. 2d 493, 762 N.W.2d 122 (holding that before accepting a no-contest plea to grounds, the circuit court "must inform the parent that '[t]he best interests of the child shall be the prevailing factor considered by the court in determining the disposition.'" (quoting Wis. Stat. § 48.426(2))). According to

---

[2] If the circuit court terminates parental rights, it "may exercise several alternatives for designating custody, guardianship, and care of the child." Brenda B., 331 Wis. 2d 310, ¶52. Nevertheless, the availability of those alternatives depends on the circuit court first determining that termination of parental rights is in the best interests of the child. Id. Accordingly, the circuit court complies with § 48.422(7)(a)'s directive to address "the potential dispositions" so long as it identifies "the two independent dispositions available to the circuit court. That is, the court may decide between dismissing the petition and terminating parental rights." Id., ¶56.

4

A.G., the correct statutory standard that applies at the dispositional phase is simply the best interests of the child, and "Wis. Stat. § 48.426(2) . . . does not set a burden of proof level." During the plea colloquy, however, the circuit court indicated that the State would have the burden of proving by clear and convincing evidence at the dispositional phase that termination of his parental rights was in his daughter's best interest. As a result, A.G. contends that his plea was not knowingly, intelligently, and voluntarily entered. I focus solely on A.G.'s second argument because it is dispositive.

B

¶56 To understand why A.G. should be permitted to withdraw his plea on this basis, it is first necessary to review the legal framework for plea-withdrawal claims and the procedural history of this case. State v. Bangert, 131 Wis. 2d 246, 274-75, 389 N.W.2d 12 (1986) provides the framework for evaluating whether A.G. is entitled to withdraw his plea. See Waukesha County v. Steven H., 2000 WI 28, ¶42, 233 Wis. 2d 344, 607 N.W.2d 607, modified on other grounds by St. Croix Cnty. Dep't of Health & Human Servs. v. Michael D., 2016 WI 35, ¶¶3-4, 368 Wis. 2d 170, 880 N.W.2d 107. Bangert and our subsequent plea-withdrawal cases set forth a two-step approach. First, a plea-withdrawal motion "is reviewed by the court" to determine whether it "establishes a prima facie violation of . . . court-mandated duties and makes the requisite allegations," namely that "the defendant did not know or understand the information that should have been provided at the plea hearing." State v.

5

Brown, 2006 WI 100, ¶¶39-40, 293 Wis. 2d 594, 716 N.W.2d 906. If the motion clears that hurdle, the second step is an evidentiary hearing "at which the state is given an opportunity to show by clear and convincing evidence that the defendant's plea was knowing, intelligent, and voluntary despite the identified inadequacy of the plea colloquy." Id., ¶40

¶57 When A.G. moved to withdraw his plea, the circuit court initially denied his motion without an evidentiary hearing because it "actually did use a clear and convincing standard when it assessed whether it thought it was in the child's best interest to terminate the parental rights." In other words, the circuit court concluded that A.G.'s motion did not satisfy the first step of Bangert——making a prima facie case for plea withdrawal——because even if A.G. wasn't told the correct statutory standard that applies at the dispositional phase, the circuit court ultimately applied the clear-and-convincing-evidence standard that it said it would.

¶58 The court of appeals reversed, holding that A.G. was not informed of the correct statutory standard that applies at the dispositional phase because "contrary to the [circuit] court's statement, at the dispositional hearing, the 'same trial rights' do not apply. There is not a burden of proof placed on the State." State v. A.G., No. 2021AP1476, unpublished slip op., ¶17 (Wis. Ct. App. Feb. 15, 2022) (emphasis added). Thus, the court of appeals held that the correct statutory standard that applies at the dispositional phase is simply the best

6

interests of the child, with no burden on any party.[3]  See id.
Accordingly, the court of appeals concluded that A.G.'s motion
made a prima facie case for plea withdrawal and that he was
entitled to an evidentiary hearing on remand to determine
whether his plea was knowing, intelligent, and voluntary,
despite the information he received regarding the statutory
standard that applies at the dispositional phase.  Id., ¶22.

¶59 Before discussing what happened at the evidentiary
hearing, it is important to emphasize that the State did not
appeal from this decision by the court of appeals.  And for that

_____

[3] This is a debatable conclusion.  To be sure, Wis. Stat. §
48.426(2) does not contain a burden of proof.  It merely states
that "[t]he best interests of the child shall be the prevailing
factor considered by the court in determining the disposition."
Id.  That being said, the State is the petitioner in this case.
As such, the State must——at a minimum——produce some evidence of
the best interests of the child at the dispositional phase.
Otherwise, the petition would have to be denied.  Moreover,
given the weighty constitutional rights at play in TPR cases,
other courts have held that the Constitution requires proof that
termination is in the child's best interest by a preponderance
of the evidence or clear and convincing evidence.  See Kent K.
v. Bobby M., 110 P.3d 1013, 1021-22 (Ariz. 2005) (holding that
due process requires proof of the child's best interests by a
preponderance of the evidence); In re D.H., 354 N.W.2d 185, 188
(S.D. 1984) (stating that "[t]he trial court must find by clear
and convincing evidence that termination of parental rights is
in the best interests of the child" (quoting another source));
see also In re B.T.B., 472 P.3d 827, 838 n.11 (Utah 2020)
(explaining that, in the context of the best-interest-of-the-
child inquiry, "the clear and convincing standard might be
constitutionally mandated"); Brian C. Hill, Comment, The State's
Burden of Proof at the Best Interests Stage of a Termination of
Parental Rights, 2004 U. Chi. Legal F. 557, 576-84 (arguing that
the Fourteenth Amendment, as interpreted by the United States
Supreme Court in Santosky, requires proof of the best interests
of the child by clear and convincing evidence). Nevertheless, as
discussed below, the question of whether there is a burden of
proof at the dispositional phase is not before us.

reason, the court of appeals' conclusion that the correct statutory standard that applies at the dispositional phase is the best interests of the child with no burden on any party is the law of the case. The law of the case is "a 'longstanding rule' that requires courts to adhere to an appellate court's ruling on a legal issue 'in all subsequent proceedings in the trial court or on later appeal.'" State v. Jensen, 2021 WI 27, ¶13, 396 Wis. 2d 196, 957 N.W.2d 244 (quoting State v. Stuart, 2003 WI 73, ¶23, 262 Wis. 2d 620, 664 N.W.2d 82). Although there are exceptions to the law of the case, none of them apply here.[4] Accordingly, we need not decide what the correct statutory standard is at the dispositional phase; instead, we must adhere to the court of appeals' holding that the standard is the best interests of the child with no burden on any party. And that means that to determine whether A.G.'s plea was knowing, intelligent, and voluntary, we have to evaluate whether the State proved by clear and convincing evidence at the Bangert hearing that, at the time he entered his plea, A.G. knew that standard.

---

[4] Those exceptions apply when "'a controlling authority has since made a contrary decision of law' on the same issue," "when the evidence at a subsequent trial is 'substantially different' than that at the initial trial; and when following the law of the case would result in a 'manifest injustice.'" Jensen, 396 Wis. 2d 196, ¶13, n.8 (quoting Stuart, 262 Wis. 2d 620, ¶24).

Because the court of appeals' conclusion that there is no burden of proof on the State at the dispositional phase is the law of the case, I do not address the guardian ad litem's argument that the court should hold that the burden is clear and convincing evidence.

8

¶60 A.G. did not appear at the Bangert hearing and no witnesses were called to testify. Instead, the State relied on the transcript of A.G.'s plea hearing, as well as transcripts of prior and subsequent hearings in the case. See Steven H., 233 Wis. 2d 344, ¶42 (explaining that at a Bangert hearing "a court may examine the entire record, not merely one proceeding, and look at the totality of the circumstances to determine" whether the plea was constitutionally sufficient). The sole question is whether this evidence clearly and convincingly demonstrates that, at the time he entered his plea, A.G. knew that the statutory standard that would apply at the dispositional phase was the best interests of the child with no burden on any party.

¶61 The plea colloquy indicates that he did not. During that colloquy, the circuit court described a different standard. The court explained that A.G.'s "trial rights" at the grounds phase included "the right to force the State to prove grounds by clear, convincing, and satisfactory evidence to a reasonable certainty." And then the circuit court said that A.G. would have "those same trial rights" at the dispositional phase. In other words, the circuit court told A.G. that the State would have to prove the best interests of the child by clear and convincing evidence. But that is not the statutory standard that applies at the dispositional phase under the court of appeals' prior ruling in this case. Thus, A.G.'s plea colloquy was defective.

¶62 The remaining evidence falls far short of showing, let alone clearly and convincingly, that A.G. knew the correct

9

statutory standard that would apply at the dispositional phase despite the defective plea colloquy. Indeed, the only evidence that even suggests that A.G. knew the correct standard is a transcript of a hearing ten months before his plea. At that hearing, the circuit court explained that the dispositional phase "focus[es] on what outcome is best for the kids that are involved," and that "everybody gets to put on testimony and evidence and argue to [the court] what they think is best for the kids that are involved," before the circuit court made the ultimate determination of "what outcome is best for the kids." This ten-month-old transcript describes the best-interest-of-the-child standard and does not reference a burden of proof on any party.

¶63 Given that A.G. received conflicting information at these two hearings, the State failed to prove by clear and convincing evidence that, at the time he entered his plea, A.G. knew the statutory standard that applies at the dispositional phase. To conclude otherwise would be absurd, since we would have to assume that A.G. ignored or disregarded the information he received from the circuit court during the plea colloquy in favor of different information he was told once ten months earlier. Additionally, common sense tells us that people forget

10

things they were told ten months earlier.[5]  That is especially true when a non-lawyer is advised about the details of legal proceedings he is facing and with which he is likely unfamiliar. For these reasons, the State failed to prove that A.G. knew the statutory standard that applies at the dispositional phase, and he is therefore entitled to withdraw his plea.  See Finley, 370 Wis. 2d 402, ¶95 (explaining that when the State fails to meet its burden of proof at a Bangert hearing, the movant is entitled to withdraw his plea).

C

¶64  The lead opinion tries to justify a different result by relying on our decision in State v. Taylor, 347 Wis. 2d 30. In that case, a criminal defendant was told during his plea hearing that he could be sentenced to a maximum of six years of imprisonment.  Id., ¶16.  In fact, the maximum potential sentence was eight years of imprisonment.  Id.  After the defendant was sentenced to the six years of imprisonment, he

---

[5] For this reason, I similarly question the lead opinion's reliance on this same ten-month-old transcript (and related factual findings by the circuit court) in rejecting A.G.'s alternative argument that he is entitled to withdraw his plea because the circuit court failed to advise him of the potential dispositions.  See lead op., ¶30.  Additionally, much of the other evidence the lead opinion cites in support of that conclusion is also suspect.  For example, what A.G. knew the day after he entered his plea is at best a weak indication of what he knew when that plea was entered since people can learn new things from day to day.  See id.  And the lead opinion's speculation about what A.G.'s counsel might have told him before entering his plea is just that——speculation.  See id., ¶32. There is no evidence in the record about what A.G.'s counsel did or did not tell A.G.

11

moved to withdraw his plea, arguing that it was not knowingly, intelligently, and voluntarily entered because he did not know the maximum potential sentence. Id., ¶18. The defendant's motion was denied without an evidentiary hearing. Id., ¶20. We affirmed, explaining that an evidentiary hearing was not required because the record was "replete with evidence" that the defendant, in fact, knew the maximum sentence he faced at the time he entered his plea. See id., ¶¶35-39. In doing so, we emphasized that we were not engaging in a harmless-error analysis, instead reiterating that "the focus is on whether the . . . plea was entered knowingly, intelligently, and voluntarily" in spite of any claimed error. Id., ¶41 n.11.

¶65 According to the lead opinion, A.G. is not entitled withdraw his plea because, "[l]ike the defendant in Taylor, [he] received what the circuit court told him he would receive." Lead op., ¶35. That is because, as mentioned previously, the circuit court said that it applied the clear-and-convincing-evidence standard at the dispositional phase. For this reason, the lead opinion concludes that "A.G. was not inhibited from weighing the pros and cons of entering this particular no contest plea by being told the State would have to satisfy a particular burden of proof because the State was actually held to and did satisfy that burden." Id.

¶66 There are several problems with the lead opinion's reliance on Taylor, and with its analysis more generally. First, Taylor was evaluating a different question than the one we are addressing in this case. Taylor concerned only whether

12

the defendant was entitled to an evidentiary hearing under the first step of Bangert's two-part plea-withdrawal framework. Taylor, 347 Wis. 2d 30, ¶42. At that step, the court must determine only whether the defendant's motion makes a prima facie showing of that the plea colloquy was defective and that he "did not, in fact, know or understand the information that should have been been provided during the plea colloquy." Id., ¶32. If the defendant's motion makes that showing, the next step is an evidentiary hearing at which "the State has the burden to prove by clear and convincing evidence that the defendant's plea, despite the inadequacy of the plea colloquy, was knowing, intelligent, and voluntary." Id.

¶67 In this case, unlike in Taylor, the court of appeals has already determined that A.G.'s motion made the prima facie case entitling him to an evidentiary hearing, and remanded for an evidentiary hearing. A.G., No. 2021AP1476, at ¶22. And as explained previously, that decision was not appealed and the court of appeals' conclusion is thus the law of the case. Accordingly, the only question before us is whether the State met its burden at the evidentiary hearing of proving by clear and convincing evidence that A.G.'s plea was knowing, intelligent, and voluntary. Thus, Taylor's rule simply does not apply to A.G.'s case. Indeed, we distinguished Taylor on precisely these grounds in State v. Finley, 370 Wis. 2d 402. In that case, we explained that Taylor does not apply when, as here, an evidentiary hearing was held on the plea-withdrawal motion. Finley, 370 Wis. 2d 402, ¶¶82-85.

13

¶68 Second, even if Taylor did apply, the lead opinion mischaracterizes its conclusion. Contrary to the lead opinion's assertions, Taylor did not conclude that whenever a defendant "receive[s] what the circuit court told him he would receive," he is not entitled to withdraw his plea. See lead op., ¶35. Instead, we held that the plea in that case "was entered knowingly, intelligently, and voluntarily [because] the record makes clear that the defendant knew the maximum penalty that could be imposed and was verbally informed at the plea hearing of the penalty that he received." Taylor, 347 Wis. 2d 30, ¶8; see also Finley, 370 Wis. 2d 402, ¶79 (describing Taylor similarly). Thus, the reason the defendant in Taylor wasn't entitled to withdraw his plea was because "the . . . record revealed that the defendant knew the potential punishment he faced if convicted"——not because he received a sentence the circuit court told him he could receive. Finley, 370 Wis. 2d 402, ¶87. This conclusion is in keeping with our other plea withdrawal cases, which likewise focus on whether the defendant's plea was knowing, intelligent, and voluntary based on the information he knew at the time he entered the plea. See id., ¶44.

¶69 The lead opinion, by contrast, looks only to events that occurred after A.G. entered his plea. To be sure, the State may rely on evidence from after a plea is entered to show that the plea was knowing, intelligent, and voluntary. See Taylor, 347 Wis. 2d 30, ¶32; Bangert, 131 Wis. 2d at 269, 283. But that evidence still must demonstrate what A.G. knew at the

14

time he entered his plea. And here, the fact that the circuit court held the State to a heightened burden of proof at disposition tells us nothing about what A.G. knew when he entered his plea. Moreover, unlike in Taylor, where the plea questionnaire/waiver of rights form, information, and criminal complaint all demonstrated what the defendant knew when he entered his plea, here we have none of that. See Taylor, 347 Wis. 2d 30, ¶¶35-38. On the contrary, we have a description given once ten months before his plea that, under the law of the case, is correct. And we have a different one given the day he entered the plea. This is far from clear and convincing evidence that A.G. knew the correct statutory standard that applies at the dispositional phase.

¶70 Finally, although the lead opinion denies it, it is importing a harmless error standard into the plea-withdrawal context. See lead op., ¶36 n.8. That is the upshot of the lead opinion's claims that "[t]he error could have been consequential, but it became insubstantial when the circuit court actually held the State to the clear and convincing standard," and that A.G. "benefitted from the circuit court holding . . . the State[] to a burden of proof the law did not require [it] to meet." Id., ¶¶36 n.8, 37. In essence, the lead opinion is conceding that A.G. did not know the statutory standard that applies at the dispositional phase, but arguing that there was no harm because the State was held to the standard of proof the circuit court said it would apply. The only reason we would care whether the circuit court did what it

15

said it would do, or whether someone benefitted from an error, is if we are evaluating whether they were harmed by that error. Yet, as Taylor said, our plea-withdrawal cases "clearly d[o] not engage in a harmless error analysis." 347 Wis. 2d 30, ¶41.

¶71 Nevertheless, the lead opinion claims that it isn't doing a harmless-error analysis, since it does not "consider whether and to what extent the information provided at the plea colloquy caused A.G. to enter a plea he would not otherwise have entered." Id., ¶36 n.8 (citing State v. Barnes, 2023 WI 45, ¶29, ___ Wis. 2d ____, 990 N.W.2d 759). Doing that, in the lead opinion's view, would be evaluating whether an error was harmless. See id. But that is exactly what the lead opinion is doing. It repeatedly asserts that A.G. "was not inhibited from weighing the pros and cons of entering this particular no contest plea" by the information he received in the plea colloquy, and that his "knowledge at the time of the plea permitted him to accurately weigh the pros and cons of entering this specific plea." See id. ¶¶36-37. Thus, the lead opinion is in fact "consider[ing] whether and to what extent the information provided at the plea colloquy" affected A.G.'s decision to plead no contest. See id., ¶36 n.8.

¶72 This approach, if taken seriously, would allow courts to substitute their own speculation about whether someone's "knowledge at the time of plea permitted him to accurately weigh the pros and cons of entering this specific plea" or "benefitted" from an error for the clear and convincing evidence of what he actually knew that our cases require. Compare lead

16

op., ¶¶36 n.8, 37, <u>with</u> <u>Finley</u>, 370 Wis. 2d 402, ¶95. Thankfully, because the lead opinion fails to garner four votes, that approach is not our law. Because we should keep the focus in evaluating a plea-withdrawal motion where it belongs——"on whether the . . . plea was entered knowingly, intelligently, and voluntarily" in spite of any claimed error——I respectfully dissent. <u>See</u> <u>Taylor</u>, 370 Wis. 2d 30, ¶41 n.11

¶73 I am authorized to state that Justice ANN WALSH BRADLEY joins this opinion.

17