COURT OF APPEALS
DECISION
DATED AND FILED

April 10, 2026

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP2668**

STATE OF WISCONSIN

Cir. Ct. No. 2021TP240

IN COURT OF APPEALS
DISTRICT I

IN RE THE TERMINATION OF PARENTAL RIGHTS TO D.H.-S., A PERSON UNDER THE AGE OF 18:

STATE OF WISCONSIN,

    PETITIONER-APPELLANT,

COURTNEY L.A. ROELANDTS, AS GUARDIAN AD LITEM FOR D.H.-S.,

    APPELLANT,

    V.

D.H.,

    RESPONDENT-RESPONDENT.

APPEAL from an order of the circuit court for Milwaukee County: LAURA GRAMLING PEREZ, Judge. *Affirmed*.

¶1 COLÓN, P.J.[1] The State of Wisconsin and guardian *ad litem* (GAL) Courtney L.A. Roelandts (together, Petitioners) appeal from an order allowing D.H. to withdraw his no-contest plea as to the ground for termination in this termination of parental rights (TPR) proceeding.[2] Petitioners argue that the postdisposition court erred when it (1) found that D.H. had made a *prima facie* showing that his no-contest plea was not made knowingly, intelligently, and voluntarily, based on a defect in the circuit court's plea colloquy; and (2) found that the State had failed to prove by clear and convincing evidence that D.H.'s plea was made knowingly, intelligently, and voluntarily despite the defect in the plea colloquy. For the following reasons, we affirm.[3]

## BACKGROUND

¶2 On December 17, 2018, the State filed a petition to find Danielle[4] to be a child in need of protection or services (CHIPS) and to remove Danielle from the parental home. On July 23, 2019, a dispositional order was entered, outlining the conditions for Danielle to return to the parental home. On November 3, 2021, the State filed a petition to terminate D.H.'s parental rights, asserting as the ground

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24). All references to the Wisconsin Statutes are to the 2023-24 version.

[2] This court granted leave to appeal the order. *See* WIS. STAT. RULE 809.50(3).

[3] Cases appealed under WIS. STAT. RULE 809.107 are "given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply[.]" RULE 809.107(6)(e). Conflicts in this court's calendar have resulted in a delay. It is therefore necessary for this court to *sua sponte* extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); *Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

[4] We refer to the family in this matter by initials or pseudonyms to maintain confidentiality and privacy, in accordance with WIS. STAT. RULE 809.19(1)(g).

that D.H. had failed to assume parental responsibility. On November 29, 2021, D.H. entered a denial to the petition and demanded a jury trial. At a hearing on May 6, 2022, the circuit court went over the rights that D.H. had in the case, specifically stating,

> You have the right to contest the petition. The petition involves a trial and the first part is regarding the jurisdictional phase of the proceedings and if the jury or the judge decides that the State has proven a ground or grounds, then the [c]ourt must find you unfit and then we move to the best interest phase of the proceedings which would be a trial to the judge and the judge would determine whether or not it is in the best interest of children either or at least one child individually whether it's in the child's best interest to terminate and grant the petition for termination of parental rights or to dismiss it and resort to some other alternative.

¶3 On December 19, 2022, D.H. chose to enter a no-contest plea as to the ground. During the plea colloquy, the circuit court discussed D.H.'s understanding of the plea process, the bifurcated procedures in TPR proceedings, and the specific elements of the failure to assume parental responsibility ground. D.H. confirmed that he had received and read a copy of the petition, had reviewed it with his attorney, and understood its contents. When describing the disposition phase of the proceedings, the court stated,

> [T]hen we move to the best interest phase or the dispositional phase and at that phase you would have all of the rights we talked about earlier except your right to a jury determination … you can force the petitioner to prove to a reasonable certainty that adoption serves the best interest of your child and if they don't, then the petition has to be dismissed and a different alternative would have to be pursued.

¶4 Notably, the court had previously explained during the colloquy that the standard of "a reasonable certainty" was "not beyond a reasonable doubt" but also "not just a preponderance of the evidence[.]" The circuit court then

3

confirmed that D.H. had discussed the plea with counsel, that he was satisfied with counsel's representation, and that D.H. had no questions about the plea. The court then found that D.H.'s plea was informed and voluntary and allowed him to enter the no-contest plea as to the ground.

¶5 On April 29, 2024, the circuit court heard evidence as to the ground and found D.H. unfit to parent Danielle. A two-day dispositional hearing took place on April 29, and May 3, 2024. The circuit court heard testimony and ultimately concluded that the termination of parental rights had "been proven by clear, convincing and satisfactory evidence."

¶6 D.H. appealed, moving for a postdisposition hearing on the basis that his no-contest plea was not made knowingly, intelligently, and voluntarily.[5] D.H. asserted that the circuit court's plea colloquy was defective when it essentially told him that there was a burden of proof at TPR disposition.

¶7 An evidentiary hearing was held on November 10, 2025, at which D.H.'s trial counsel testified. At the outset, the postdisposition court stated that it believed that D.H. had made a *prima facie* case that the plea was not made knowingly, intelligently, and voluntarily, based on the circuit court's statement that D.H. "could force the petitioner to prove to a reasonable certainty that adoption serves the best interest of [the] child and if they don't, then the petition has to be dismissed."

---

[5] D.H. also made claims regarding ineffective assistance of counsel, but those claims appear to have been abandoned on appeal.

¶8      The postdisposition court then heard testimony from D.H.'s trial counsel, who stated that he had described the best interest standard at TPR disposition to D.H., specifically noting that he intentionally does not talk about any burden of proof or mention it to his clients, instead focusing solely on the best interest standard.  Counsel stated that he had had numerous conversations and sent multiple letters to D.H. outlining the TPR process and the ground alleged in the petition.  Counsel also stated that at no point in time did D.H. ask him about any burden of proof at either the grounds phase or the disposition phase.

¶9      D.H. also testified at the hearing.  He acknowledged that counsel had reviewed the TPR petition with him and that counsel had sent him multiple letters explaining the ground pleaded against him and the best interests standard at disposition.  D.H. stated that trial counsel never told him that there was any burden of proof at disposition.  D.H. stated that he did not know that there was a burden of proof at disposition, although he did state that he was familiar with the concept of burdens of proof from "[c]riminal cases."  When asked whether he recalled the circuit court telling him that at disposition he could force the State to prove to a reasonable certainty that adoption served the best interests of the child, D.H. replied, "I believe so."  However, when asked whether he understood the court to mean that there was a burden of proof at disposition, D.H. stated, "I didn't know that."  When asked, "You didn't know that there was a burden of proof at disposition?", D.H. replied, "No."

¶10     At the postdisposition hearing, the State further introduced evidence which included:

- A letter dated November 9, 2021, from trial counsel to D.H. explaining the TPR process and the ground alleged in the petition.

- A letter dated April 8, 2022, from trial counsel to D.H. providing D.H. with a copy of the TPR court report, explaining the ground alleged in the petition, and explaining the "best interests of the child" standard at disposition.

- A letter dated July 29, 2022, from trial counsel to D.H. explaining the bifurcated process of a TPR case, including that the court would be considering the best interests of the child at the dispositional hearing, without mentioning any burden of proof.

- A letter dated December 20, 2022, from trial counsel to D.H. reminding D.H. that he had pleaded no-contest as to ground at the hearing the day before and that, at the dispositional hearing, they would be arguing what was in Danielle's best interests. This letter also did not include any mention of a burden of proof at disposition.

¶11    The postdisposition court found that D.H. had made a *prima facie* case that the plea colloquy was defective and that the plea had not been made knowingly, intelligently, and voluntarily. In addition, the court found that the State had failed to prove by clear and convincing evidence that D.H.'s plea was made knowingly in spite of the defect in the plea colloquy. The court reasoned that the State did not prove that D.H. was told by the circuit court that there was no burden of proof at disposition, noting that the only time burden of proof was specifically mentioned to D.H. was during the plea when the circuit court told him that there was a burden of "reasonable certainty that adoption serves the best interests of the child." The postdisposition court therefore allowed D.H. to withdraw his no-contest plea as to the ground for termination. The State and GAL now appeal.

## DISCUSSION

¶12    If a parent enters a plea at the grounds phase of a TPR case, the circuit court must engage the parent in a colloquy to ensure that the plea is made knowingly, intelligently, and voluntarily. ***Kenosha Cnty. DHS v. Jodie W.***, 2006

6

WI 93, ¶25, 293 Wis. 2d 530, 716 N.W.2d 845.  Notions of due process require that the parent be provided with enough information to evaluate the stakes involved and to understand the consequences of the plea.  *Brown Cnty. DHS v. Brenda B.*, 2011 WI 6, ¶41, 331 Wis. 2d 310, 795 N.W.2d 730.  A plea that is not knowing, intelligent, and voluntary violates fundamental due process and a defendant may withdraw the plea as a matter of right.  *State v. Brown*, 2006 WI 100, ¶19, 293 Wis. 2d 594, 716 N.W.2d 906.

¶13     Allegations that a plea was not entered into knowingly are analyzed under the framework set forth in *State v. Bangert*, 131 Wis. 2d 246, 389 N.W.2d 12 (1986); *Oneida Cnty. DSS v. Therese S.*, 2008 WI App 159, ¶6, 314 Wis. 2d 493, 762 N.W.2d 122.  Within that framework, a parent seeking to withdraw his or her plea based on the court's failure to fulfill its duties in the plea colloquy must make a *prima facie* case of a violation of the statutory duties and must allege that the parent did not understand what should have been explained by the court.  *Therese S.*, 314 Wis. 2d 493, ¶6.  Whether a parent has presented a *prima facie* case is a question of law we review de novo.  *Id.*, ¶7.  If the parent sufficiently makes a *prima facie* case, the burden shifts to the State to show by clear and convincing evidence that the plea was entered knowingly, intelligently, and voluntarily despite the defects in the plea colloquy.  *Id.*

¶14     Whether the State has met this burden is a question of constitutional fact.  *See* **State v. Gomolla**, 2024 WI App 13, ¶18, 411 Wis. 2d 239, 4 N.W.3d 610.  In our review, "we accept the circuit court's findings of historical and evidentiary fact unless they are clearly erroneous" and "[w]e independently determine whether those facts demonstrate that the [parent's] plea was knowing, intelligent, and voluntary."  *State v. Hoppe*, 2009 WI 41, ¶61, 317 Wis. 2d 161, 765 N.W.2d 794.  The parent's "right to an evidentiary hearing … cannot be

circumvented by either the court or the State asserting that based on the record as a whole the [parent], despite the defective plea colloquy, entered a constitutionally sound plea." *State v. Howell*, 2007 WI 75, ¶7, 301 Wis. 2d 350, 734 N.W.2d 48.

### I. The Insubstantial Defect Doctrine

¶15     At the outset, we address Petitioners' argument that the circuit court's statement to D.H. advising him of a burden of proof at the dispositional phase should be overlooked as an insubstantial defect. In essence, they argue that, because the circuit court ultimately held the State to the burden of clear and convincing evidence at disposition, D.H. got what he bargained for during his plea colloquy, which would make his no contest plea knowing, intelligent, and voluntary.

¶16     However, as noted by D.H., the insubstantial defect doctrine has previously only been applied in a few very specific instances, primarily in criminal cases where the circuit court informed the defendant of the wrong maximum sentence, which are all distinguishable from the present case. *See State v. Cross*, 2010 WI 70, ¶4, 326 Wis. 2d 492, 786 N.W.2d 64 ("[W]here a defendant pleads guilty with the understanding that he faces a higher, but not substantially higher, sentence than the law allows, the circuit court has still fulfilled its duty to inform the defendant of the range of punishments."); *State v. Taylor*, 2013 WI 34, 347 Wis. 2d 30, ¶39, 829 N.W.2d 482; *State v. Finley*, 2016 WI 63, ¶¶33-34, 95, 370 Wis. 2d 402, 882 N.W.2d 761.

¶17     While it is true that courts generally consider "precedent regarding plea withdrawal in the context of criminal cases to be persuasive authority regarding TPR proceedings," *State v. A.G.*, 2023 WI 61, ¶18, 408 Wis. 2d 413, 992 N.W.2d 75 (citation omitted), we are not convinced that the insubstantial

defect doctrine applies in this case. First, *Cross*, *Taylor*, and *Finley* are all criminal cases which involved discrepancies in the circuit court's plea colloquy regarding the maximum possible length of sentence. In contrast, the present case involves the circuit court's defective plea colloquy as it relates to the *burden of proof* to which it would hold the State at disposition. These are distinct and vastly different issues which we are reluctant to analogize, particularly given the nature of the rights at stake. *See State v. Steven V.*, 2004 WI 47, ¶21, 271 Wis. 2d 1, 678 N.W.2d 856 (stating that "[p]arental rights termination adjudications are among the most consequential of judicial acts, involving as they do 'the awesome authority of the State to destroy permanently all legal recognition of the parental relationship.'" (Citation omitted)). Furthermore, and as noted by the postdisposition court, *Taylor* and *Finley* did not stand for the proposition that a plea is made knowingly, intelligently, and voluntarily based solely on the fact that a defendant got what he or she bargained for.

¶18 In addition to criminal cases, our supreme court applied the insubstantial error doctrine in a case with a substantially similar issue in the lead opinion in *State v. A.G.*, 2023 WI 61, 408 Wis. 2d 413, 992 N.W.2d 75. In that TPR case, A.G. was told during the grounds phase plea colloquy that he would "have the right to force the State to prove the grounds by clear, convincing, and satisfactory evidence to a reasonable certainty." *Id.*, ¶9. Later, at disposition, A.G. was told that he had the "same trial rights" as he would have had at the grounds phase of the proceedings. *Id.* A.G. later moved to withdraw his no contest plea on the basis that the plea colloquy was defective because the circuit court's statement about there being a burden of proof at the grounds phase was included in its statement that he would have all the "same trial rights" at disposition. *Id.*, ¶10. Our supreme court was thus tasked with determining

whether A.G. should be permitted to withdraw his no contest plea which resulted in a fractured opinion.

¶19    Our supreme court found itself divided into three positions, none of which garnered a majority.  The lead opinion applied the insubstantial defect analysis to the plea colloquy, determining that the defect was insubstantial.  *Id.*, ¶37.  It cited to *Taylor* on the basis that, like the defendant in *Taylor*, A.G. ultimately received what he bargained for.  *Id.*, ¶36.  However, both the concurring and dissenting opinions in *A.G.* rejected the use of the insubstantial defect analysis.  Petitioners ask this court to follow the lead opinion in *A.G.* and apply the insubstantial defect analysis to the present case.  We decline to overlook the deficiency in the plea colloquy here as an insubstantial defect because the court did not misstate a minor detail, but instead it failed in its duty to explain how it is required to determine whether to terminate D.H.'s rights.  *See also* WIS. STAT. § 48.426 ("The best interests of the child shall be the prevailing factor considered by the court in determining the disposition"); *State v. H.C.*, 2025 WI 20, 416 Wis. 2d 233, 21 N.W.3d 330 ("[Section] 48.426(2) requires the circuit court to decide, in its discretion, whether termination of parental rights is in the best interests of the child, without imposing a burden of proof on any party.").

¶20    We therefore analyze D.H.'s request to withdraw his no contest plea under the framework of *Bangert*.

### II.   *Whether D.H. Has Made a Prima Facie Case for Plea Withdrawal*

¶21    In his postdisposition motion, D.H. pointed to the circuit court's statement during the plea colloquy regarding the burden of proof at disposition being "you can force the petitioner to prove to a reasonable certainty that adoption serves the best interest of your child[.]"  D.H. argued that, because the court had

previously explained the standard of "a reasonable certainty" to be "not beyond a reasonable doubt" but "not just a preponderance of the evidence," he understood the court to mean that the State had a burden of proof that it would have to meet at disposition, and that if the State failed to meet that burden of proof, his parental rights would not be terminated.

¶22    "While a plea's validity is based on the parent's understanding at the time the plea was entered, events before and after the plea can inform a court's analysis." *A.G.*, 408 Wis. 2d 413, ¶20.  We are not persuaded that the circuit court's passing references to the dispositional phase as the "best interest" phase was enough to provide any meaningful information to understand that the burdens of proof at the grounds phase and at disposition are governed by different standards.  The circuit court never explicitly told D.H. that there was no burden of proof at the dispositional phase, and, when combined with the circuit court's use of the term "reasonable certainty," D.H.'s allegations in his postdisposition motion present a *prima facie* case that his plea was not knowing, intelligent, and voluntary.  Without a clear explanation, it would certainly be possible that D.H. would understand that the State would be held to a higher burden of proof at disposition than in reality.  We therefore agree with the circuit court on this issue, and conclude that this satisfied D.H.'s burden to demonstrate a *prima facie* case for plea withdrawal.

### III.  Whether the State Demonstrated By Clear and Convincing Evidence that D.H.'s Plea was Knowing, Intelligent, and Voluntary

¶23    Because we conclude that D.H. made a *prima facie* case for plea withdrawal, we next turn to the issue of whether the State demonstrated by clear and convincing evidence that D.H.'s plea was entered knowingly, intelligently, and voluntarily, in spite of the circuit court's defective plea colloquy.  On that

11

issue, we agree with D.H. and conclude that the postdisposition court was correct when it held that the State had failed to meet its burden of proof.

¶24 D.H. testified that, when the circuit court conducted its plea colloquy, he did not understand the court to mean that there was a burden of proof at disposition. He stated that he was familiar with the concept of a burden of proof from his experience with criminal cases. The court engaged D.H. in a thorough colloquy, in which D.H. stated that he had read the petition, had discussed it with counsel, and that counsel had answered his questions. D.H. was permitted to ask questions during the colloquy if he did not understand what was happening, and he did not do so. The State also provided testimony from trial counsel in which counsel stated that he had sent multiple letters to D.H. outlining the TPR process, which highlighted the distinct grounds phase and dispositional phase of the proceedings. Counsel also stated that he intentionally did not discuss burden of proof at disposition with D.H. in order to avoid any confusion, instead stressing that the best interests of the child would be the prevailing factor. D.H. also acknowledged that counsel never told him there was a burden of proof at disposition.

¶25 However, we agree with the postdisposition court's reasoning, in which it stated that "the evidence before us indicates that [D.H.] was told by [the circuit court] that the State did have a burden of proof and that is the only information that [D.H.] was given about burden of proof." The circuit court's statement that D.H. could force the State "to prove to a reasonable certainty that adoption serves the best interest of [the] child, and if they don't, then the petition has to be dismissed," clearly indicated that the State would have a burden of proof at disposition. Notions of due process require that a parent be provided with enough information to evaluate the stakes involved and to understand the direct

consequences of their plea, ***Brenda B.***, 331 Wis. 2d 310, ¶41, and the evidence clearly demonstrates that D.H. was uncertain about the burden of proof that would be required at disposition. The State therefore failed to satisfy its burden of proving by clear and convincing evidence that D.H.'s plea was knowingly, intelligently, and voluntarily entered into in spite of the circuit court's defective plea colloquy.

## CONCLUSION

¶26 For the foregoing reasons, we conclude that the postdisposition court correctly held that D.H. made a *prima facie* case for plea withdrawal and that the State failed to prove by clear and convincing evidence that D.H.'s no-contest plea was nevertheless knowing, intelligent, and voluntary. For those reasons, we affirm the order of the postdisposition court.

*By the Court.*—Order affirmed.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.